THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* HY BELLOWS and TONY MAIORANO, Respondents.

68

Argued May 31, 1939; decided July 11, 1939.

*William F. X. Geoghan, District Attorney (George F. Palmer* of counsel), for appellant.

*Robert R. Kaufman* for United Sign Writers & Sign Hangers Union, Local 304, *amicus curiæ.*

*Sidney O. Raphael* for Millie Munzer, complainant, and others, *amici curiæ.*

*David I. Ashe* and *Louis Waldman* for respondents.

CRANE, Ch. J. The appellants were convicted of disorderly conduct in the City Magistrates' Court, City of New York, County of Kings. Sentence was suspended. An appeal to the Court of Special Sessions, pursuant to section 41 of the Inferior Criminal Courts Act (L. 1910, ch. 659, as amd.), resulted in the judgment of conviction being reversed for errors, both of law and fact. The information against them was dismissed and the defendants discharged. An appeal has been allowed to this court, pursuant to section 520 of the Code of Criminal Procedure.

Mollie Munzer and her husband conducted a little store for the sale of handbags at 816 Nostrand avenue, borough of Brooklyn. They employed no help and had no employees. In the summer of 1938 they bought of the Peerless Neon Company two neon signs to put up on their store. The signs were erected in August of 1938. This sign company had a contract with the United Sign Repairs, Local 304, affiliated with the International Industrial and Building Construction Workers of America, and the sign was hung by members of Local 304. The defendants were members of Local No. 3, Electrical Workers — New York Sign Painters Local No. 230, affiliated with the American Federation of Labor. The two defendants, members of the latter union, thereafter picketed the store carrying up and down in front signs bearing these legends:

" Maintenance of electric signs on these premises unfair to Local Union No. 3, Electrical Workers — New York Sign Painters Local No. 230 — Affiliated with A. F. of L."

" Electrical signs on these premises unfair to Local Union No. 3, Electrical Workers — New York Sign Painters Local No. 230."

In the middle of the latter sign appeared: " Workers Local No. 137 — Affiliated with A. F. of L."

This constituted a secondary boycott and was illegal. The Munzers were merely purchasers of the product in the market and not parties to any labor dispute. There was no more right to picket their store than to picket the home or store of any other person who happened to buy

non-union material or goods from a rival union. (*Gold-finger* v. *Feintuch*, 276 N. Y. 281.) There was here no such unity of interest with the manufacturer as was developed in the *Goldfinger* case. (Cf. *Canepa* v. *" John Doe,"* 277 N. Y. 52.) The magistrate, in his decision, said: " I find here that the acts of these defendants did annoy this complainant. They obstructed the complainant's place of business. They interfered with the complainant and disturbed him, and the extent of the annoyance and disturbance. and the obstruction is such that a breach of the peace might have been occasioned by the acts of the defendants, and therefore constitute disorderly conduct." And he cited subdivision 2 of section 722 of the Penal Law.

The appellate court, in reversing, said: " In our opinion the record abundantly justifies the finding that the picketing was peaceful and free from disorder. That being so, the defendants were entitled to an acquittal." (170 Misc. Rep. 66, 67.)

Before we can come to the merits of any case we must first determine our jurisdiction. The Inferior Criminal Courts Act, section 41, says that an appeal to the Court of Special Sessions may be taken as a matter of right by the defendant from a judgment upon conviction rendered by a city magistrate in any criminal action or proceeding or special proceeding of a criminal nature. No appeal of course can be taken from an acquittal even though the judge is wrong on both his law and facts. The Special Sessions, on appeal, " may render the judgment which the court below should have rendered, or may, according to the justice of the case, affirm or reverse the judgment, in whole or in part, as to all or any of the defendants." (§ 50.)

The Constitution of the State of New York, article VI, section 7, limits this court in criminal cases to the review of questions of law except where the judgment is of death.

" The jurisdiction of the court of appeals, except where the judgment is of death, * * * shall be limited to the review of questions of law; * * *.

" Appeals may be taken to the court of appeals in the classes of cases enumerated in this section.

" In criminal cases, directly from a court of original jurisdiction where the judgment is of death, and in other criminal cases from an appellate division or otherwise as the legislature may from time to time provide."

It will be seen that the Legislature has no power to give this court a review of the facts in any criminal case except where the judgment is of death.

By section 519 of the Code of Criminal Procedure an appeal may be taken from a judgment or order of the Appellate Division of the Supreme Court to the Court of Appeals from a judgment reversing a judgment of conviction. If we consider this appellate branch of the Special Sessions within the category of an Appellate Division for the purposes of this section, yet on the appeal no question may be reviewed, only questions of law.

That an appeal may be taken from a reversal of the judgment of conviction by the Special Sessions' appellate branch is specifically provided for in section 520 of the Code of Criminal Procedure, which says that an appeal may be taken from the appellate tribunal specified in said section, upon the certification of a judge of the Court of Appeals or a justice of the Appellate Division of the Supreme Court. Among the appellate tribunals mentioned is the Appellate Part of the Court of Special Sessions. (*People* v. *Wolf*, 247 N. Y. 189; *People* v. *Carmichael*, 249 N. Y. 189.) None of these provisions, however, enlarge the scope of the review or permit this court to pass upon the facts. An appeal to this court from a judgment reversing a judgment of conviction could be allowed, under section 520 of the Code of Criminal Procedure, but the allowance must result in an affirmance or dismissal if there be nothing we can review.

As stated, the Special Sessions reversed on the law and the facts and directed an acquittal. This form followed the practice on appeals by the Appellate Division, as provided in section 543-a of the Code of Criminal Procedure.

This requires the order of the Appellate Division, reversing a judgment of conviction, to state whether the reversal is made upon the facts or upon the law, or upon both the law and the facts, as in civil cases. Where the order merely states that the reversal is for error of law, it shall be presumed, for the purpose of an appeal to the Court of Appeals, that the Appellate Division reviewed the facts and was satisfied with them.

Treating this appeal for the present as governed by the procedure on appeals from reversals by the Appellate Division, we are confronted with a question impliedly but not squarely decided by this court. When the order of reversal states that it is upon both the law and facts, and the indictment or information is dismissed, may this court review the reversal and direct a new trial instead of dismissal? Is this a review of the facts and is it a question of second jeopardy? If there be a substantial question of fact and evidence sufficient, if believed, to convict the defendant, is the appellate court justified in directing an acquittal or dismissing the indictment, instead of ordering a new trial? In such a case the Appellate Division should and generally does order a new trial, but if, through error, it dismisses the indictment, may this court pass upon the evidence to the extent of reversing the judgment and ordering a new trial? This is done in civil cases where the complaint has been dismissed, but the evidence made out a question of fact for the jury. Whether there be evidence to take the case to the jury always presents a question of law.

I see no reason why the same rule should not apply in criminal cases, and, although we are obliged to review the evidence to see whether or not there be a substantial question of fact, yet this is not the review on the facts prohibited by the Constitution. It is a question of law whether, from any view of the testimony, there was a question of fact regarding the defendant's guilt which should have been submitted to the trial judge or to the jury and not disposed of by dismissal in the appellate court. This point has

not been squarely decided by this court, yet the cases lean to this conclusion, and some dicta indicate that we have considered such to be the law. (*People* v. *Weiner*, 211 N. Y. 469, 475.) Although this case did not contain a statement that the Appellate Division had reviewed the facts and was satisfied with them, we have this statement in the opinion which assumes that, if the dismissal had been improper, this court could have said so: " If the Appellate Division had merely reversed the judgment in this case, and had proceeded no further, the order would not have been reviewable in this court in the absence of a statement in the body thereof that the court had reviewed the facts and was satisfied with the judgment so far as the facts were concerned. (*People* v. *O'Brien*, 164 N. Y. 57.) The Appellate Division, however, has not only reversed the judgment but it has also dismissed the indictment, thus finally disposing of the prosecution. This course was taken, we presume, upon the ground that it was manifestly impossible upon another trial to establish an essential element of the offense charged, to wit, the presence of the defendant in the town of Andes and the act of solicitation by him personally in that town. The district attorney appears to have made no suggestion that he could strengthen the case in that respect nor does he make any such suggestion in this court. The case, therefore, was one of reversal in which it was neither necessary nor proper to order a new trial. (Code Crim. Proc. § 543.) Under these circumstances the dismissal of the indictment seems to have been warranted."

The *Weiner* case was cited in *People* v. *Redmond* (225 N. Y. 206), which only indirectly bears upon the matter. *People* v. *Kuland* (266 N. Y. 1) is not in point. Anyhow it arose prior to the adoption of section 543-a of the Code of Criminal Procedure. *People* v. *Mangan* (262 N. Y. 508) was decided without opinion. Here the Appellate Division reversed a conviction and dismissed the indictment, and we affirmed the judgment of the Appellate Division. The record shows that the sufficiency of the evidence to establish

knowledge of falsity of bank reports was presented to the court. On the other hand, in *People* v. *Peck* (205 N. Y. 554) the Appellate Division had reversed a judgment of conviction for perjury and had dismissed the indictment. A motion was made to dismiss the appeal to this court, as the reversal was on the facts as well as the law, and that, therefore, the Court of Appeals had no jurisdiction. The memorandum decision states: "Motion denied on the ground that this court has jurisdiction to pass upon the sufficiency of the indictment, but that alone, on this appeal." Reference may be made to *People* v. *Williams* (243 N. Y. 162); *People* v. *Schwartz* (265 N. Y. 310), and *People* v. *Shafer* (273 N. Y. 475).

As to second jeopardy, dismissal of the indictment or charge by the Appellate Court, while having the same results as an acquittal, does not constitute a retrial, if ordered by this court, second jeopardy, as the defendant has waived his constitutional immunity by his appeal. (*People* v. *Palmer*, 109 N. Y. 413.)

Perhaps a more serious question arises over the wording of section 50 of the Inferior Criminal Courts Act. It differs from section 543 of the Code of Criminal Procedure in that it gives to the Special Sessions the right or power to direct the judgment which the magistrate should have given. The language is: "After hearing the appeal the court * * * may render the judgment which the court below should have rendered, or may, according to the justice of the case, affirm or reverse the judgment, in whole or in part." Section 543 of the Code of Criminal Procedure says: "The appellate court * * * must either reverse or affirm the judgment appealed from * * * and in cases of reversal may, if necessary or proper, order a new trial."

Does section 50 of the Inferior Criminal Courts Act give to the Appellate Part of the Special Sessions the right to review the evidence *de novo* as upon a trial and acquit the defendant if it so desires? In other words, does the appellate court have the same power to acquit as the magistrate

had?  The magistrate, even although he is wrong on both his law and his facts, may acquit the defendant, and from his judgment there is no appeal.  Is the Special Sessions in the same position?  Even though there be a question of fact regarding the defendant's guilt, may it in the same way direct his acquittal, without ordering a new trial?  If this is the meaning of the section then there certainly can be no appeal to this court; and even if there may be, we have no power to order a retrial, as it would amount to second jeopardy.  Note the words used.  Power is given to return the judgment which the court below *should* have rendered, not *could* have rendered.  This leads me to believe that this refers to a case where the magistrate should have dismissed the case and directed an acquittal because there was no evidence; then the appellate court may do likewise.  Uniformity of practice in criminal cases in appellate tribunals should be preserved unless it is quite clear that the Legislature intended otherwise.  The right of an appeal rests with the Legislature, and it may limit or condition the appeal at its will as long as it preserves constitutional rights, but if it intends to give to the Special Sessions the right to retry the defendant on the printed record, without seeing the witnesses, it should make this very clear.

We, therefore, conclude that the practice regarding the granting of new trials upon questions of fact should be the same in the Special Sessions as in the Appellate Divisions.

We come back, therefore, to a consideration of the case upon the record, and are of the opinion that the Special Sessions was in error in dismissing the charge and should have granted a new trial.  A reading of the opinion would indicate that the reversal was actually upon the law.  That the defendants picketed in a secondary boycott is assumed by that court, but contrary to the finding of the magistrate, the Special Sessions says " that the picketing was peaceful and free from disorder."  Apparently for this reason, and this reason alone, the court determined that no offense of disorderly conduct had been proved.  If this be the ground of reversal it amounts to a question of law and not one of

fact. In this particular we differ with the Special Sessions and hold that such picketing, which has been declared unlawful by this court, does constitute disorderly conduct, according to the conceded facts in this case. (*People* v. *Jenkins*, 138 Misc. Rep. 498; 255 N. Y. 637; *Goldfinger* v. *Feintuch*, 276 N. Y. 281; *Canepa* v. " *John Doe*," 277 N. Y. 52.) However, as the appellate tribunal did reverse upon the facts as well as upon the law, we, in order to keep well within our own jurisdiction, reverse the judgment in part, by ordering a new trial.

As to each defendant, the judgment, in so far as it dismisses the complaint or charge, should be reversed and a new trial ordered.

HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; LEHMAN, J., dissents on the ground that the picketing in this case, even if unlawful, did not constitute disorderly conduct; O'BRIEN, J., taking no part.

Judgment accordingly.