GEORGE R. SCHIVERA, Appellant, v. LONG ISLAND LIGHTING COM-PANY, Defendant, and ROBERT FORRESTER, as Treasurer of Building and Construction Trades Council of Nassau and Suffolk Counties, an Unincorporated Association, Respondent.

Argued June 3, 1946; decided October 3, 1946.

*Joseph M. Proskauer, Donald Marks, Burton A. Zorn* and *Harold H. Levin* for appellant. I. The complaint states a cause of action for equitable relief and incidental damages. Section 876-a does not apply to this case. The mere fact that the action arose as a result of a labor dispute between strangers to the plaintiff does not *ipso facto* bring it within section 876-a.

(*Canepa* v. " *John Doe* ", 277 N. Y. 52; *Chapman* v. " *John Doe* ", 255 App. Div. 893; *Scharf* v. " *John Doe* ", 247 App. Div. 882; *Coward Shoe, Inc.,* v. *Retail Shoe Salesmen's Union,* 177 Misc. 708; *Arden Sales Corp.* v. *Hawley,* 176 Misc. 821; *Back* v. *Kaufman,* 175 Misc. 169; *Feldman* v. *Weiner,* 173 Misc. 461; *Carpenters Union* v. *Ritters Cafe,* 315 U. S. 722.) II. Section 876-a does not apply to an action in which the picketing by a labor union has an unlawful objective. (*American Guild of Musical Artists* v. *Petrillo,* 286 N. Y. 226; *Opera on Tour, Inc.,* v. *Weber,* 285 N. Y. 348; *Florsheim Shoe Store Co.* v. *Shoe Salesmen's Union,* 288 N. Y. 188.)    III. Since plaintiff is not a party to the dispute between the builder and the building trades council and is an ultimate consumer, section 876-a does not apply. (*Goldfinger* v. *Feintuch,* 276 N. Y. 281; *Canepa* v. " *John Doe* ", 277 N. Y. 52; *Arden Sales Corp.* v. *Hawley,* 176 Misc. 821; *Feldman* v. *Weiner,* 173 Misc. 461; *Chapman* v. "*John Doe* ", 255 App. Div. 893; *People* v. *Bellows,* 281 N. Y. 67; *People* v. *Muller,* 286 N. Y. 281.)    IV. To grant relief to plaintiff would not constitute an abridgement of liberty of discussion as guaranteed by the Federal Constitution. (*Bakery Drivers Local* v. *Wohl,* 315 U. S. 769; *Thornhill* v. *Alabama,* 310 U. S. 88; *A. F. of L.* v. *Swing,* 312 U. S. 321; *Cafeteria Union* v. *Angelos,* 320 U. S. 293; *Carpenters Union* v. *Ritters Cafe,* 315 U. S. 722.)

*I. Cyrus Gordon* and *Carl Rachlin* for respondent. I. The controversy between the parties involves or arises out of a labor dispute within the meaning of section 876-a of the Civil Practice Act. (*Norman* v. *Sullivan,* 185 Misc. 957; *New Negro Alliance* v. *Grocery Co.,* 303 U. S. 552.) II. Even if the controversy is not a labor dispute or does not grow out of a labor dispute, within the meaning of section 876-a of the Civil Practice Act, making known the fact of a lawful labor dispute between the trades council and the builder, by peaceful means is encompassed within the meaning of freedom of speech, as guaranteed in the 1st and 14th Amendments to the United States Constitution and article I, section 8 of the Constitution of the State of New York. The injunction order of Special Term was an infringement upon the right of freedom of speech, as guaranteed by the Federal and State Constitutions, and was violative

thereof. (*A. F. of L.* v. *Swing,* 312 U. S. 321; *U. S.* v. *Carolene Products Co.,* 304 U. S. 144; *Senn* v. *Tile Layers Union,* 301 U. S. 468; *Thornhill* v. *Alabama,* 310 U. S. 88; *Carlson* v. *California,* 310 U. S. 106; *Bakery Drivers Local* v. *Wohl,* 315 U. S. 769.)

DESMOND, J. The facts are undisputed. William Levitt & Sons, Inc., not a party here, owns a tract of land in Roslyn Heights, Nassau County, on which it has built and is building a number of residences. The streets on which the houses are located, inside the development, are private streets and there is only one entrance thereto from the public highway, through a gateway. Levitt is a nonunion builder which, sometime prior to November 28, 1945, refused to recognize the defendant-respondent union or to bargain with it. Thereupon the union on November 28, 1945, called a strike of such union men as were employed by Levitt inside the development. At the same time the union established a picket line at the gateway leading from the public road into the Levitt property. The picketing was peaceful and there can be no doubt that, in so picketing Levitt, the union members were exercising their constitutional right of free speech. About three weeks after the strike and picketing began, plaintiff contracted to purchase from Levitt one of the dwellings in the subdivision and on January 28, 1946, closed the purchase. The house was completed except that defendant Long Island Lighting Company had not yet connected to this house (and to others in the area) its gas and electric services. On December 7, 1945, defendant Long Island Lighting Company sent some of its employees to the subdivision to do the work necessary to connect up its gas and electric lines to certain of the residences, including the one now owned by plaintiff. The lighting company's employees belonged to a union other than defendant union. What followed is described thus in an affidavit by a vice-president of Long Island Lighting Company:

"When defendant Long Island's employees arrived at the entrance gate of said community known as North Park, which was the only point of public ingress to the houses specified in said applications, they were confronted by two pickets carrying placards in sandwich-board fashion which bore the following legend:

'UNFAIR

TO

BUILDING

TRADES

Mechanics of A. F. of L.
Building & Construction
Trades Council
of
Nassau & Suffolk
Counties'

"The said pickets took up their position in the roadway lead-ing to the houses in which defendant Long Island's employees (members of Local Union B-1049) and said employees of defend-ant Long Island, upon asking whether they would be allowed to enter the property or not, were told by one of the said pickets that they, the said pickets, had instructions not to allow any utilities to do any work whatsoever in the community known as North Park. Thereupon, when confronted with these circum-stances, the said employees of defendant Long Island refused to cross the picket line, and gave as the reason for their refusal to so cross said picket line that as members of Local Union B-1049, International Brotherhood of Electrical Workers, A. F. of L., that by virtue of the provisions of the constitution and by-laws of said Union of which they were members, and the Union Shop provisions of the contracts between said Union and Long Island and its subsidiary the Nassau Company, they were obligated to respect the existence of a picket line and were for-bidden to cross the same; that for them to cross such picket line would result in the loss of membership in the Union and, ultimately, loss of employment.

"As a result of the refusal of the employees of defendant Long Island to cross the picket line and proceed with the work of installing the equipment necessary to provide gas and electric service applied for, the defendant Long Island was prevented from carrying out said work."

With these facts before it, Special Term denied the motion of defendant union for a dismissal of the complaint and directed defendant Long Island Lighting Company to install its services

at plaintiff's residence. It went further and granted plaintiff an injunction, *pendente lite,* against the picketing. It not only enjoined the defendant union from "picketing plaintiff's premises", or the area in which it is located, in such manner as to compel the lighting company employees to cross the picket line in order to do their work, but forbade picketing "in such manner as will directly or indirectly result in preventing the Long Island Lighting Company from installing the gas and electric service in plaintiff's premises". That, of course, effectively forbade any picketing at all since picketing was physically possible only at the single gateway entrance to the development, which entrance is, incidentally, a considerable distance from plaintiff's dwelling.

On appeal the Appellate Division reversed on the law and dismissed the complaint, solely because of plaintiff's conceded failure to comply with section 876-a of the Civil Practice Act. That well known "anti-injunction" statute deprives the courts of "jurisdiction" to issue any restraining order "in any case involving or growing out of a labor dispute", except after finding facts concededly not here present. The Appellate Division stated: "This case grows out of a labor dispute in which the disputants are the Building and Construction Trades Council of Nassau and Suffolk Counties, and William Levitt & Sons, Inc., builders ". (270 App. Div. 852.) That statement seems to us to be unquestionably true on the undisputed proof, and, being so, it ends this case.

Plaintiff's only answer is that he is not a party to that labor dispute. We do not see how that can by-pass the express prohibition of section 876-a. That statute, like its prototype, the Federal Norris-LaGuardia Act, prohibits the issuance of any injunction, which, like the one here granted by Special Term, enjoins peaceful picketing in a labor dispute. Jurisdiction to issue any such injunction is, in so many words, denied to the courts. It makes no difference who is the plaintiff. There is no jurisdiction to issue such an injunction on anyone's application. Such are the plain words of the statute, and the obvious intent makes it even plainer. The whole purpose of the "anti-injunction" statute would be neatly and effectively thwarted if such an injunction were available to an outsider, injured or annoyed by the peaceful and lawful picketing. Such a third

party can always be found by the disputant who wishes to enjoin his adversary—it was conceded in open court on the argument of this appeal that the attorney who represents this plaintiff-householder is in fact being paid by the strike-bound employer Levitt. (That circumstance explains why plaintiff continues to seek a reinstatement of the temporary injunction against picketing, even though the picketing has now ceased and the gas and electric installations have in fact now been made.)

The cases cited as justifying this injunction are not in point since they involve either secondary boycotts or violent or otherwise intrinsically unlawful strikes or picketing.

Since, as the Appellate Division held, this injunction was forbidden by section 876-a, it is unnecessary to discuss the violation of the union's fundamental constitutional right of peaceful picketing.

The judgment and order should be affirmed, with costs, and the certified question answered in the negative. The motion to dismiss the appeals should be denied.

FULD, J. (concurring). The question, simply posed, is whether a third person, who suffers incidental injury from peaceful picketing in a labor dispute between others, may obtain injunctive relief without complying with the provisions of section 876-a of the Civil Practice Act. I agree with the conclusion stated by Judge DESMOND that plaintiff here must comply with the requirements of that statute. Its broad language makes no exception for cases such as the present, and there is no reason in logic or justice why the courts should engraft on it such an exception.

Every labor dispute has the capacity of injuring noncontestants. Every strike, every stoppage of production or cessation of work due to labor differences, necessarily imposes an involuntary burden of hardship upon the consuming public. That plaintiff suffered inconvenience or injury as a result of the picket line neither renders the union liable (Restatement of Torts, § 809) nor furnishes reason for departing from the State's settled policy. (See *May's Furs & Ready-to-Wear, Inc.*, v. *Bauer*, 282 N. Y. 331, 340; *Interborough Rapid Transit Co.* v. *Lavin*, 247 N. Y. 65, 74–75; *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260.) If the mere fact of such incidental

injury were to give rise to a cause of action, the protection which the Legislature intended to confer upon workingmen by enacting section 876-a would soon disappear, and, indeed, this court has already ruled that the statute applies even though plaintiff alleges that he is not a party to the primary dispute between employer and union. (*People* v. *Muller,* 286 N. Y. 281, 284; *Goldfinger* v. *Feintuch,* 276 N. Y. 281.)

There was here no secondary boycott aimed at plaintiff. Any hardship resulting to him was, as indicated, only an incidental effect, not the primary objective of the picketing. Nevertheless, even if the picketing had been accompanied by threats or intimidation directed against the lighting company or its employees, section 876-a would still be applicable. (*May's Furs & Ready-to-Wear, Inc.,* v. *Bauer, supra.*) As this court expressed it in the *May* case (282 N. Y., at p. 341): "Plaintiffs contend that the fact of extreme violence warrants the conclusion that the case at bar does not involve a labor dispute, and consequently is not subject to the restrictions contained in section 876-a. The fallacy of this argument is revealed by the fact that where a defendant has not been guilty of unlawful activities, perforce no injunction would issue even in the absence of section 876-a. The need for statutory safeguards can exist only where a defendant is guilty of some wrongdoing and is liable to injunctive restraint. The effect of the statute is to regulate the procedure by which an injunction may be obtained and to limit the scope of the relief which may be granted. The statute is rendered meaningless unless it is allowed to operate in those cases where plaintiff is entitled to some relief."

Actually, as the affidavits herein establish the lighting company's employees were prevented from making the necessary installations, not by threats or by " acts of coercion going beyond the mere influence exerted by the fact of picketing " (*Cafeteria Union* v. *Angelos,* 320 U. S. 293, 295), but by reason of the constitution and by-laws of their own union.

We are not called upon to determine the wisdom of what was done. Our task is to construe the statute, and, as indicated above, I cannot read the broad provisions of section 876-a as being inapplicable to the case before us.

The motion to dismiss the appeals should be denied, the judgment and order of the Appellate Division should be

affirmed, with costs, and the question certified answered in the negative.

LEWIS, J. (dissenting). The action is in equity for injunctive relief and incidental damages. The injunction sought by the plaintiff would compel the defendant lighting company to install at his residence, those connecting facilities which will make gas and electricity available for domestic use. The plaintiff also seeks a temporary injunction against the defendant Trades Council restraining it from picketing the area surrounding his home in such a manner that employees of the lighting company are prevented from installing those services.

Our inquiry goes to the legal sufficiency of the plaintiff's complaint which has been successfully challenged by the respondent, Trades Council, upon the asserted grounds that a labor dispute is involved and that the complaint fails to conform with the provisions of section 876-a of the Civil Practice Act. There is also before us for review, by leave of the Appellate Division upon a certified question, an order of that court which reversed on the law an order of Special Term insofar as it granted plaintiff's motion for an injunction *pendente lite*. In those circumstances we may adopt as the factual basis for our decision the statement of facts alleged in the complaint and additional facts set forth in affidavits which were considered by Special Term and the Appellate Division in passing upon the plaintiff's right to a temporary injunction. (*Florsheim Shoe Store Co.* v. *Shoe Salesmen's Union,* 288 N. Y. 188, 192–193.)

The plaintiff purchased from William Levitt & Sons, Inc., a dwelling house in the North Park section of Roslyn Heights, Nassau County. The house was designed for the use of gas as the heating element and electricity for illumination. After a certificate of occupancy had been issued to the plaintiff a formal application was made to the defendant Long Island Lighting Company—the only utility enfranchised to furnish gas and electric service for domestic use in Nassau County—to perform its statutory duty to connect its gas mains and electric lines with the plaintiff's house. (Transportation Corporations Law, § 12). In its effort to comply with such demand the defendant lighting company directed its employees to install the connections for which application had been made. Meantime, however, a labor

dispute had arisen between the plaintiff's grantor, William Levitt & Sons, Inc., and the respondent Building and Construction Trades Council—an association of twenty-six local labor unions the members of which are engaged in building trades in Nassau and Suffolk counties. The cause of that dispute is that, as a builder and developer of suburban homes in various sections of Nassau County, including the North Park section of Roslyn Heights, William Levitt & Sons, Inc., has refused to recognize the unions affiliated with the defendant council. At this point we note that neither the plaintiff nor the lighting company has any unity of interest with the disputants in that labor controversy. However, when the lighting company's employees were enroute to plaintiff's home and had reached the single entrance to the North Park section they were confronted by pickets who carried placards bearing the legend "Unfair to Building Trades—Mechanics of A. F. of L. Building & Construction Trades Council of Nassau & Suffolk Counties." Upon inquiry by the lighting company's employees whether they would be allowed to enter the section where plaintiff's house was located they were told that the pickets "had instructions not to allow any utilities to do any work whatsoever in the community known as North Park." The employees of the lighting company thereupon refused to cross the picket line and gave as the reason for such refusal that they were forbidden to do so by the constitution and by-laws of their own Local Union B-1049 International Brotherhood of Electrical Workers, A.F. of L. As a result of such picketing the defendant lighting company refused to install the connections which would have afforded plaintiff the gas and electric service which the company was under a statutory duty to furnish. The ground for such refusal by the lighting company was that its employees were members of Local Union B-1049, with which it had a contract governing labor conditions affecting such employees; that to have compelled its employees to cross the picket line, or to have employed others to do so in an effort to make the installations at plaintiff's house would have caused a strike by its entire body of employees and that such strike in turn would have deprived consumers of gas and electric service within its franchise area comprising large sections of Nassau and Suffolk Counties.

The motion by the defendant Trades Council to dismiss the complaint was denied at Special Term where a mandatory

injunction issued directing the defendant lighting company to make the connecting installations for which formal application had been made. Special Term also enjoined the defendant Trades Council from picketing the area in which the plaintiff's house is located in such manner as to compel the employees of the defendant lighting company to cross a picket line in their effort to gain access to plaintiff's premises for the purpose of installing gas and electric service, or in such manner as will directly or indirectly result in preventing the lighting company from making such installations. Upon appeal by the defendant Trades Council to the Appellate Division the order of Special Term was reversed on the law; plaintiff's motion for a temporary injunction was denied and the motion by the defendant Trades Council to dismiss the complaint was granted. The Appellate Division has stated the basis of its decision to be that—"This case grows out of a labor dispute in which the disputants are the Building and Construction Trades Council of Nassau and Suffolk Counties, and William Levitt & Sons, Inc., builders. Since section 876-a of the Civil Practice Act applies to 'any case involving or growing out of a labor dispute,' plaintiff should have complied with the provisions of that section." (270 App. Div. 852.)

It is true that the picket line formed across the only entrance to the North Park section where plaintiff's premises are located was stationed at that point by the defendant Trades Council in the exercise of its right to conduct peaceful picketing as an incident to those rights which it asserts in the labor dispute in which it is engaged with William Levitt & Sons, Inc. It is important to note, however, that the plaintiff pleads no grievance against the defendant Trades Council by reason of the activities of its pickets against William Levitt & Sons, Inc.; nor does the temporary injunction granted by Special Term restrain such activities in any way.

The plaintiff's house was uninhabitable without gas to supply heat for domestic uses and electricity for like purposes. Lacking both heat and light the application was made which, except for interference by picketing done under the direction of the defendant Trades Council, would have brought about compliance by the defendant lighting company with its statutory duty to furnish gas and electricity. The grievance which the plaintiff pleads is that, although he is an entire stranger to the labor

dispute—of which the picket line is an incident—the activity of that picket line has served, without fault on his part, to deprive him of gas and electric services in his home to which he is legally entitled and which the defendant lighting company is under a statutory duty to supply. In those circumstances we conclude that plaintiff's complaint and the affidavits before us state a case which is not one "involving or growing out of a labor dispute" and accordingly does not fall within the purview of section 876-a of the Civil Practice Act. (*Goldfinger* v. *Feintuch,* 276 N. Y. 281, 286; *Canepa* v. *" John Doe ",* 277 N. Y. 52, 54–55; *American Guild of Musical Artists* v. *Petrillo,* 286 N. Y. 226, 231.)

Labor objectives there are which have gained the sanction of law in this State and in the nation. However, like all rights recognized by government ruled by justice under law, the statutory and common-law rights which labor unions have gained in support of their objectives are burdened with the duty of respect for those private rights of individuals which are not within the scope of the unions' prerogatives. We have said that " * * * picketing is for the purpose of promoting the lawful interests of a labor union in a labor dispute" (per LEHMAN, Ch. J. in *People* v. *Muller,* 286 N. Y. 281, 284). In the present case, however, the facts pleaded by the plaintiff, which we must accept as true, may be the subject of proof of conduct in a labor dispute by pickets posted by the defendant Trades Council which go beyond the limits of permissible interference with the private rights of the plaintiff who has no unity of interest with the disputants and whose pleading states that he has " no relationship to or concern with said dispute ". In such a case equity may intervene. (See *People* v. *Bellows,* 281 N. Y. 67, 70–71; *Busch Jewelry Co.* v. *United Retail Employees' Union,* 281 N. Y. 150, 155.)

Neither the plaintiff's complaint nor the temporary injunction granted by Special Term serves as a limitation upon speech. We are not confronted with that constitutional problem because neither the complaint nor the temporary injunction which the plaintiff seeks offends against constitutional guarantees of free speech. In this connection the Supreme Court of the United States, dealing with a kindred problem, has recently said " * * * recognition of peaceful picketing as an exercise of free speech does not imply that the states must be without power

to confine the sphere of communication to that directly related to the dispute. Restriction of picketing to the area of the industry within which a labor dispute arises leaves open to the disputants other traditional modes of communication. To deny to the states the power to draw this line is to write into the Constitution the notion that every instance of peaceful picketing—anywhere and under any circumstances—is necessarily a phase of the controversy which provoked the picketing. Such a view of the Due Process Clause would compel the states to allow the disputants in a particular industrial episode to conscript neutrals having no relation to either the dispute or the industry in which it arose." (*Carpenters Union* v. *Ritter's Cafe,* 315 U. S. 722, 727–728.)

The vice of the defendant Trades Council's conduct upon which plaintiff rests his right to relief was not in the exercise of its right of free speech. (See *Bakery Drivers Local* v. *Wohl,* 315 U. S. 769, 775.) In the complaint before us is the allegation that "said defendant unions acting singly and in concert have threatened defendant Lighting Company with a strike if said Lighting Company should cause said utilities to be installed. As a result of said picketing and threats, defendant Lighting Company has refrained from causing its employees to install said utilities, and has refused to make such installation." The conduct by the defendant Trades Council of which the plaintiff complains is the unlawful interference with performance by the defendant lighting company of its statutory duty to make available to plaintiff the electric and gas services to which he was legally entitled.

There remains for consideration the contention by the defendant Trades Council that the question presented by this appeal has become moot and that accordingly the appeal must be dismissed upon the ground that this court will not review abstract questions. The argument thus advanced fails to heed the fact that in addition to the injunctive relief sought by the plaintiff he demands compensatory damages. After setting forth in the complaint acts and omissions by the defendant of which he complains it is alleged that " plaintiff and his family have been unable to occupy said premises and will be unable to do so until said utilities have been installed." It is also alleged that " by reason of the premises, plaintiff expects that he will be subjected to substantial loss and damage as a result of the acts and omis-

sions of the defendants, the exact amount of which damage is now unascertainable.''

The assertion by the defendant Trades Council that the question presented by the appeal has become moot has as its basis the fact that after the decision herein by the Appellate Division which reversed the order of Special Term and dismissed the plaintiff's complaint, the defendant Trades Council withdrew the picket line posted at the single entrance to the North Park section where the plaintiff's premises are located. Thereafter, on or about May 4, 1946, the defendant lighting company made the installations which afforded gas and electric service to plaintiff's house to which he had acquired title on January 28, 1946. If, as the complaint states, the plaintiff took title on the latter date to the premises here involved, and if, despite formal application thereafter made to the defendant lighting company, the services of gas and electricity for domestic purposes were not made available at his home until May 4, 1946, proof of the lack of those services during the substantial intervening period of time under the conditions pleaded by the plaintiff may afford a legal basis for his demand for compensatory damages against both defendants. What was said in *Nevins, Inc., v. Kasmach* (279 N. Y. 323, 326) applies here with equal force: '' Since the plaintiff rightfully invoked the jurisdiction of equity to apply for an injunction, the complaint must be sustained and plaintiff may have any incidental relief by way of damages or otherwise to which it may be entitled so that complete disposition of the controversy between the parties, arising in equity, may be obtained (*McGean* v. *Metropolitan Electric Ry. Co.,* 133 N. Y. 9, 16, 17; *Sadlier* v. *City of New York,* 185 N. Y. 408, 414, 415).'' (See, also, *Ferguson* v. *Village of Hamburg,* 272 N. Y. 234, 239; *People ex rel. O'Connor* v. *Girvin,* 227 N. Y. 392, 397; *Williams* v. *Montgomery,* 148 N. Y. 519, 524–525.)

The judgment and order of the Appellate Division should be reversed and the order of Special Term affirmed, with costs in this court and in the Appellate Division. The question certified by the Appellate Division should be answered in the affirmative.

Loughran, Ch. J., and Dye, J., concur with Desmond, J.; Fuld, J., concurs in separate opinion; Lewis, J., dissents in opinion in which Conway and Thacher, JJ., concur.

Judgment and order affirmed, etc. [See 296 N. Y. 851.]