Gilbert H. King, J.
This is a motion for summary judgment in an action for replevin of a mobile home. The plaintiff, Michael A. Recchio, purchased the mobile home in question in 1965 and thereafter made an agreement with one Barbara Dee whereby she would assume the monthly payments due on the mobile home to the Wyoming County Bank and Trust Company and when all the payments were made, ownership of the home would be transferred to her. Possession of the mobile home was given to Barbara Dee when this oral agreement was made. Thereafter, the said Barbara Dee, as President of Carpets by Bianco, Inc., executed a financing agreement purporting to give a security interest in the mobile home to the defendant, Manufacturers & Traders Trust Company in order to secure payment of a loan made to Carpets by Bianco, Inc. The defendant bank properly filed its security agreement as required by the Uniform Commercial Code. The said Barbara Dee defaulted in the monthly payments she was to make under the agreement with Recchio to the Wyoming County Bank and Trust Company and the plaintiff then continued these payments himself until the debt was discharged. Recchio brought suit against Dee and obtained a judgment for the monthly payments.
Thereafter, Carpets by Bianco, Inc., defaulted in payments to the defendant bank and the bank took possession of the mobile home according to its security agreement, whereupon the plaintiff Recchio replevied the mobile home from the defendant by initiating this action.
The question presented on this motion for summary judgment is which of the parties to this present action have the superior right to this mobile home as a matter of law.
It is clear from the pleadings and moving papers that the agreement between Recchio and Dee was a “ contract for sale ” within the scope of section 2-106 of the Uniform Commercial Code. The object of the contract was the sale of “ goods ” as defined by section 2-105 of the Uniform Commercial Code.
It is the contention of the defendant that when Recchio gave possession of the mobile home to Dee, the only reservation or retention of title which he preserved for himself was that of a security interest. Section 2-401 of the Uniform Commercial Code provides in part that “ Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the *790 Article on Secured Transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed to by the parties. ’ ’ This section had the effect of limiting the plaintiff Recchio’s rights in the mobile home to a security interest despite the fact that, as he contends, he may not have intended to so limit his rights. Section 2-401 provides that the mere delivery of this mobile home to Dee was sufficient to divest the seller of any other rights he may have had.
A security interest arising under article 2 of the Uniform Commercial Code is subject to the provisions of article 9. Section 9-302 of the Uniform Commercial Code provides in part: “ (1) A financing statement must be filed to perfect all security interests except the following * * * (d) a purchase money security interest in consumer goods; but filing is required to perfect such a security interest in a motor vehicle required to be licensed or registered in this state, and filing in the place specified in paragraph (b) of subsection (1) of Section 9-401 is required to perfect, for the purposes of Section 9-313 only, such a security interest in a fixture ” (emphasis added).
It is admitted by the plaintiff herein that he did not file a financing statement pursuant to article 9 of the Uniform Commercial Code. However, the plaintiff Recchio contends that a financing statement was not required, because his interest was a purchase-money security interest in consumer goods and the mobile home in question was not “ a motor vehicle required to be licensed or registered in this state ’ ’ and hence, would be excluded from the filing requirements of article 9 (emphasis supplied).
In the court’s opinion, the mobile home in question was “ consumer goods ” as defined by section 9-109 (subd. [1]) since it was “ used or bought for use primarily for personal, family or household purposes”. Recchio’s interest in the “ consumer goods ” was a purchase-money security interest since it was ‘ ‘ taken or retained by the seller of the collateral to secure all or part of its price (Uniform Commercial Code, § 9-107, subd. [a].)
The defendant bank contends that this mobile home is not excluded from the filing requirements, because it is a motor vehicle required to be licensed. The defendant relies on subdivision 8 of section 401 of the Vehicle and Traffic Law which provides in part that ‘1 the provisions of this chapter in relation to registration * * * for motor vehicles, shall apply also to trailers.” However, paragraph (d) of subdivision (1) of section 9-302 of the Uniform Commercial Code requires fifing of financial statements in transactions involving a “ motor vehicle ” *791 required to be licensed. Even if the mobile home in question requires licensing under the Vehicle and Traffic Law, the question still remains as to whether it is a “ motor vehicle.” Section 125 of the Vehicle and Traffic Law defines a motor vehicle as 1 ‘ Every vehicle * * * operated or driven upon a public highway by any power other than muscular power”. By the definition of the Vehicle and Traffic Law as well as by commonly accepted usage a motor vehicle would appear to require some sort of self-propulsion. This mobile home is not a self-propelled vehicle and does not have any power of its own. Furthermore, section 119 of the Vehicle and Traffic Law defines a house coach as ‘1 any vehicle motivated by a power connected therewith or propelled by a power within itself, which is or can be used as the home or living abode or habitation of one or more persons, either temporarily or permanently.” The definition goes on to say that a “ house coach propelled by a power within itself shall be deemed a motor vehicle, a house coach motivated by a power connected therewith shall be deemed a trailer, and all house coaches shall be deemed vehicles.” (Emphasis supplied.) This definition clearly indicates that all house coaches are deemed vehicles for purposes of the Vehicle and Traffic Law but that only house coaches having a power within themselves shall be deemed motor vehicles, those being propelled by a power connected therewith being referred to merely as trailers. The Recchio mobile home is not propelled by a power within itself and therefore, even for the purposes of the Vehicle and Traffic Law, it would be deemed a trailer and not a motor vehicle. It is the court’s opinion that this mobile home is not genetically or by statute included within the definition of a motor vehicle and therefore, even though it may be a trailer requiring licensing under the Vehicle and Traffic Law, it is not that type of “ goods ” which requires filing of a financing statement to perfect a purchase-money security interest.
Since the mobile home is within the exclusion of paragraph (d) of subdivision (1) of section 9-302 of the Uniform Commercial Code, the filing of a financing statement to perfect the security interest of the plaintiff Recchio was not required.
It might be argued that Recchio did not have an enforcible security interest against the debtor Dee or third parties (such as the defendant bank), because of his failure to comply with paragraphs (a) and (b) of subdivision (1) of section 9-203 of the Uniform Commercial Code, which provides that a security interest in collateral not in the possession of the secured parties is not enforcible unless “ the debtor has signed a security agreement which contains a description of the collateral”. Admit *792 tedly, in this case the security agreement was oral. “ By reason of the failure to include compliance with this article’s statute of frauds (U. C. C. § 9-203(1)) in the list of steps required for perfection in U. C. C., § 9-302, we have the anomalous situation that a security interest may be technically perfected, yet still invalid against the debtor or third parties by reason of noncompliance with the statute of frauds.” (Homer Kripke, Practice Commentary; McKinney’s Cons. Laws of N. Y., Book 62½, Uniform Commercial Code, p. 428.) The court is of the opinion that, under the facts of this case, the anomaly should be resolved in favor of the plaintiff and holds that a perfected security interest obtained by compliance with and pursuant to sections 9-302 and 9-303, is not invalid against the debtor or third parties by reason of noncompliance with section 9-203 of the Uniform Commercial Code.
The defendant bank and Becchio have conflicting security interests. The priority between them is determined by subdivision (4) of section 9-312 of the Uniform Commercial Code, which provides that ‘ ‘ A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 10 days thereafter ”. Since Becchio’s “ purchase money security interest ” came into being and was ‘ ‘ perfected ’ ’ coincidentally with the delivery of the mobile home to Dee (Uniform Commercial Code, § 9-303, subd. [1]), his security interest has priority over that claimed by the bank.
It is, however, the further contention of the plaintiff Becchio that the defendant bank’s security interest was not merely subordinate to his, but that it in fact had no validity. He bases his claim on the fact that the defendant’s financing statement, a copy of which is before the court, named Carpets by Bianco, Inc. as debtor and was signed by Barbara Dee as president. While it is admitted by both parties that possession of the mobile home was given by the plaintiff Becchio to Dee when the oral agreement was made, the pleadings and motion papers are completely devoid of any allegations or proof that Barbara Dee conveyed the mobile home to Carpets by Bianco, Inc. Absent proof that Carpets by Bianco, Inc. had some interest in this mobile home, the corporation has no interest to convey to the bank as security for the loan it obtained. The mere fact that Barbara Dee was president of the corporation does not make the property which she owns or possesses the property of the corporation. Barbara Dee as an individual and Carpets by Bianco, Inc. are two separate entities.
*793 It is possible for security interests to arise in collateral not owned by the debtor. Under such circumstances, the rights of the owner as against the secured party are set forth in section 9-112 of the Uniform Commercial Code. It appears, therefore, the defendant bank would have a valid security interest even if in fact Carpets by Bianco, Inc. was not the owner of the collateral. Such a security interest would, however, be subordinate to that of Recchio as heretofore determined.
The plaintiff’s motion for summary judgment awarding plaintiff possession of the said chattel is granted. Recchio’s right to possession and disposition of the mobile home is, however, subject to the rights created by any subordinate security interest the defendant has as provided for by section 9-504 of the Uniform Commercial Code. Since the chattel is available and the plaintiff may obtain possession of it, the alternate relief sought in the complaint, to wit, a judgment in the sum of $1,000 with interest from September 1, 1967 is unnecessary and accordingly denied. The plaintiff’s demand for $500 damages for the alleged unlawful detention of the mobile home must be and the same is hereby denied because as heretofore decided, the defendant did have a valid security interest and therefore had a legal right to take possession of the mobile home. Furthermore, the plaintiff failed to prove any such damages on the argument of this motion.
Defendant’s cross motion for summary judgment dismissing the complaint and adjudicating that the plaintiff is entitled to the possession of the said mobile home as of the date of the commencement of this action and that plaintiff has converted same, and awarding damages to the defendant and against the plaintiff for the value of said mobile home in the amount of $800, with interest from September 22, 1967, together with the costs and disbursements of this action, is in all respects denied.