In the Matter of Caroline Julia
**VINARSKY, Bankrupt.**
No. 66–BK–139.

United States District Court
N. D. New York.
March 29, 1968.

Estabrook, Burns, Hancock & White, Syracuse, N. Y., for petitioner First Nat. Bank and Trust Co. of Bethlehem, Pa.; Charles H. Umbrecht, Jr., Syracuse, N. Y., of counsel.

Joseph F. Lynch, Binghamton, N. Y., pro se.

Buerger & O'Connor, Buffalo, N. Y., for Marine Midland Trust Co. of Southern New York and Marine Midland Trust Co. of Northern New York, amici curiae; Alfred A. Buerger, William J. O'Connor, Jr., Buffalo, N. Y., of counsel.

## MEMORANDUM-DECISION AND ORDER

JAMES T. FOLEY, District Judge.

This bankruptcy review involves an interesting and close question of interpretation of the New York Uniform Commercial Code (UCC), effective September 27, 1964. The search is for legislative intent concerning construction of a very limited term as used in the new Code. Despite this confinement the issue is perplexing and close due to the fact that in order to find out what the legislature meant similar and related words previously used in the old Statutes of New York repealed and unrepealed by the Uniform Commercial Code in some respect branch into several different New York Statutes and must be evaluated for determination of the legislative purpose.

The other difficulty is that in a bankruptcy proceeding with validity and priority of statutory liens at stake such issues are measured by local substantive State law that is ordinarily settled by rulings accepted as authoritative of the trial or appellate courts. (See Hertzberg v. Associates Discount Corp., 6 Cir., 272 F.2d 6, 7, cert. den. 362 U.S. 950, 80 S.Ct. 861, 4 L.Ed.2d 868; Fifth Third Union Trust Co. v. Kennedy, 2 Cir., 185 F.2d 833; See 4–A Collier on Bankruptcy, Section 70:49, pgs. 596–7, 602–03). However, in existence are only two rulings of the Supreme Court of New York, a court of general jurisdiction but below the New York appellate

courts. They disagree as to the interpretation and legislative intent of the UCC Section here involved. One is Albany Discount Corp. v. Mohawk National Bank of Schenectady (Supreme Court, Schenectady County), 54 Misc.2d 238, 282 N.Y.S.2d 401 (July 24, 1967), in which the Judge agreed by direct reference with Referee Ryan's reasoning in his decision in this case, and in another one with similar issue. The agreement in reasoning and conclusion is a house trailer is to be considered a motor vehicle under the Uniform Commercial Code for which a financing statement must be filed to perfect the security interest. Contrary to that reasoning and conclusion of Judge Crangle and Referee Ryan is that of Justice King in Recchio v. Manufacturers and Traders Trust Co. (Supreme Court, Genesee County), 55 Misc.2d 788, 286 N.Y.S.2d 390 (January 12, 1968), holding that the mobile home involved there was a self-propelled vehicle and, having power of its own, is not a motor vehicle under the Uniform Commercial Code terminology, and therefore not within the requirement for the filing of a financing statement to perfect a security interest under the provisions of UCC Art. 9–302(1) (d) regarding a motor vehicle.

It is my understanding the Albany Discount case is to be argued in the Appellate Division, Third Judicial Department soon. Of course, it is not known when decision will be forthcoming or the length of time necessary to pass, if ever, for the highest authoritative court of New York, the Court of Appeals, to reach and finally rule upon the issue. It is always better to wait a reasonable time, when possible, for the interpretations of State law by the State's highest Court, but the outlook now does not give promise of speedy finality from that source. Under the Erie doctrine, New York decisions in existence, therefore, must be canvassed in the search for "educated guess" for the correct construction of the New York law that will be agreed upon by its courts in due course. (See Sutro Bros. & Co. v. Indemnity Insurance Co. of North America, 2 Cir., 386 F.2d 798, 802).

The facts are stipulated and recited in detail in the Referee's decision. Sufficient for discussion is that the Bankrupt, being a resident of Binghamton, Broome County, New York, purchased about April 26, 1965 under a retail installment contract a 1965 Richardson Mobile Home. This contract was assigned and the financing provided by the petitioner-Bank. The house trailer or mobile home, as it is also called, was delivered to its present location in Binghamton, New York, and set upon concrete block piers where it remains. It is agreed that the trailer was not licensed to be hauled upon the public highways of New York. No financing statement pursuant to the pertinent provisions of the Uniform Commercial Code was filed in the New York State Secretary of State Office or the Broome County Clerk's Office, in which County the purchaser/bankrupt resided at the time of purchase and contract. A financing statement was filed in the Schoharie County Clerk's Office on May 17, 1965.

On these facts the Referee ruled that inasmuch as the UCC of New York became effective September 27, 1964, there was no compliance with its filing requirements and the lien arising from the security instrument running to the Bank was null and void and subordinate to the lien of the Trustee under Section 70c of the Bankruptcy Act and Art. 9–301(1) (b) and (3) of the New York UCC. The position of the petitioner-Bank and the Amicci Curiae, also financing institutions, is that under the filing requirement provisions of the Uniform Code applicable here there was a specific exception for a trailer being goods of a particular kind and not being a motor vehicle. Therefore, the Bank urges that filing was not required and the security interest retained its full validity and priority as a lien without any filing.

The Sections of the Article of the Uniform Commercial Code, highly im-

portant to be analyzed are brief in their content and are now set forth:

New York UCC—Art. 9–302.—When Filing is Required to Perfect Security Interest; Security Interests to Which Filing Provisions of This Article Do Not Apply

(1) A financing statement must be filed to perfect all security interests except the following:

\* \* \* \* \* \*

(d) a purchase money security interest in consumer goods; but filing is required to perfect such a security interest in a motor vehicle required to be licensed or registered in this state, and filing in the place specified in paragraph (b) of subsection (1) of Section 9–401 is required to perfect, for the purposes of Section 9–313 only, such a security interest in a fixture.

After careful consideration and with realization of the closeness of the question, my judgment inclines toward the reasoning and conclusions of Referee Ryan and Judge Crangle. It should be noted at this point that in Justice King's decision in Recchio there is no reference to either of those decisions and they may not have been called to his attention. It should also be noted that Judge Crangle did not enter into the area of Referee Ryan's decision discussing the broad definition of the excepted "consumer goods", and neither shall this decision. My only observation is the legislative definition of "consumer goods" in the Code has as wide a scope as words of description permit, and may reasonably include any chattel regardless of size "if used or bought for use primarily for personal, family or household purposes." (UCC Art. 9–109(1). A boat under this language was held to constitute "consumer goods". (Atlas Credit Corp. v. Dolbow (1961), 193 Pa.Super. 649, 165 A.2d 704). However, my decision is placed solely upon the holding a trailer is a motor vehicle and subject specifically to filing to perfect the security interest. There is no definition of motor vehicle set forth in the Uniform Commercial Code. (See In re Ferro Contracting Co., 3 Cir., 380 F.2d 116).

The reasons for my interpretation with this lack of clearness or detail in any definition in the Commercial Code are arrived at in the same manner as Judge Crangle and Referee Ryan, placing particular importance upon a definition unrepealed and still effective in Section 301(1) of Article 9 of the Personal Property Law, McKinney's Consol. Laws, c. 41. Therein is precise definition of the terms "motor vehicle" or "vehicle". The definition for both "\* \* \* means any device propelled or drawn by any power other than muscular power, upon or by which any person or property is or may be transported or drawn upon a public highway, road or street."

There are varieties of definitions in the sections of the Vehicle & Traffic Law of New York of house coach, motor vehicles and trailers which the Banking Institutions argue indicate a clear legislative intent of distinct cleavage between motor vehicle and trailers in New York law. (New York Vehicle & Traffic Law, McKinney's Consol.Laws, c. 71, Sections 119, 125, 156, 388; see also Hennessy v. Walker, 279 N.Y. 94; 17 N.E.2d 782, 119 A.L.R. 1029; People v. Guilianti, 10 N.Y.2d 433, 224 N.Y.S.2d 4, 179 N.E.2d 850). However, I agree with Judge Crangle that these delineations, obviously intermingled for the varied purposes of general vehicle regulation and responsibility upon highways, were intended only for vehicle and traffic applications. The significant difference is that Art. 9, § 301(1) of the New York Personal Property Law combining motor vehicle and vehicle in the same type definition as explained above has much more relevant and intimate contact with the Uniform Commercial Code to determine what the legislative intent was when only the words "motor vehicle" were used in UCC Art. 9–302(1) (d). Great significance, in my judgment, must be accorded to the Personal Property Law definition in Art. 9–301(1) inasmuch as it is one of the few

provisions in the New York Personal Property Law not repealed by the new Commercial Code. If any Statutes are to be read into the Uniform Commercial Code involved here, or at least in conjunction with it, I would think this unrepealed article of the Personal Property Law generally entitled "Motor Vehicle Retail Installment Act" overrides selection of other New York Statutes for comparison.

It is worthy of some consideration that under the old law filing was required for conditional sales of trailers as well as motor vehicles. It is interesting, also,—but of course in no way a bar or estoppel,—that the retail installment contract form used for the transaction here was the same kind used for motor vehicles and stated in part: "The seller hereby sells and the buyer hereby purchases * * * the following motor vehicle * * *".

 I believe the analogy to the Personal Property Law definition clarifies a doubtful meaning of the words "motor vehicle", and reasonably explains the absence of "or vehicle" in the Commercial Code inasmuch as there existed a combined similar definition for both that I hold the legislature intended to be carried over. (3 Sutherland Statutory Construction, 3rd Ed., Ch. 61, pg. 156). Legislative language will be interpreted on assumption the legislature was aware of existing statutes. (2 Sutherland Statutory Construction, Section 3003, pg. 224). I think the Personal Property Law definition discussed above must reasonably and sensibly be interpreted as part and parcel of the relevant Uniform Commercial Code section here in dispute. It would be difficult for me to apply Vehicle and Traffic Law provisions and definitions as so related and relevant.

The petition to review is denied and dismissed, and the decision and order of the Referee is confirmed in all respects.

It is so ordered.